■ · THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AUGUSTIN MELENDEZ, Appellant.—Judgment, Supreme Court, New York County, rendered on June 15, 1977, convicting defendant upon his pleas of guilty to two counts of criminal sale of a controlled substance in the third degree (Penal Law, § 220.39), and sentencing him to two indeterminate terms of imprisonment of from four years to life, both to run concurrently, modified, on the law and the facts, to the extent of vacating the sentence and remanding for resentence. Defendant-appellant was indicted for five drug sales, under two separate indictments charging sales in the second and third degrees. He entered pleas of guilty to one count of criminal sale of a controlled substance in the third degree under each indictment. The promised sentence on each plea was four years to life, to run concurrently, which plea bargain was fulfilled. In *People v Maldonado* (70 AD2d 308), we stated (p 309), "In our view it, is unwise for a Trial Justice, in connection with a negotiated plea of guilty, and in advance of a presentence report, to make a purportedly unconditional promise to the prosecutor that the sentence will not be less than agreed upon; and if such a promise is made, the Judge is not bound by it." and (p 310), "that 'promise' to the prosecutor is subject to the presentence report and any other information that the Judge may have at the time of sentence and that *the Judge is free to impose whatever sentence he thinks is just within the legal limits.*" (Emphasis added.) We see no reason to depart from that policy. While the sentencing minutes, as reproduced in the dissent, might also convey, as indicated by our dissenting brother, the Judge's personal view concerning the drug law sentencing structure, that is by no means all they convey. In the light of the scope available to him, to wit, a minimum of from one year, the sentencing Judge's comment that "I could not sentence you to less than four years unless the District Attorney would recommend it" shows us quite clearly that he felt bound by the promise to the prosecutor and did not feel, as he must, that "the judge is free to impose whatever sentence he thinks is just within the legal limits." Concur—Sandler, J. P., Sullivan, Markewich and Carro, JJ.

Lupiano, J., dissents in a memorandum as follows: Affirmance is required. There is no merit to defendant's contention that the sentencing court was under the erroneous impression that it was *absolutely* bound by the sentence agreement reached with the prosecutor. Before imposing sentence, the court stated: "Mr. Melendez, we had an agreement at the time the plea was taken that you would be sentenced to a maximum term of life on each case and the minimum of four years each to run concurrent. I must honor that agreement. For me to give you less than that without the District Attorney's agreement, because he is part of the agreement, would be just as wrong as if I double crossed you and gave you five to six years to life. All I am doing as a judge in this case, *because of the law, we have on sentencing where I have very limited powers* is to agree to carry out an agreement that you made to your attorney and the District Attorney. So the Judge in this case unfortunately is a little more than a rubber stamp. *I do not like the law, I wish I could make the decision what to sentence you. But the Legislature has taken this power away from us in this kind of case.* I could not sentence you

to less than four years unless the District Attorny *[sic]* would recommend it" (emphasis added). Patently, the record is devoid of any reservation expressed by the court as to the propriety of the four year to life sentence arrived at through "plea bargaining." The court in the above comment merely informed defendant that the bargain fairly arrived at would be adhered to, nothing being demonstrated to warrant a departure from such bargain. Justice Dontzin is an able, experienced jurist, fully familiar with the procedural and statutory mandates concerning criminal justice. Common sense dictates that his comment simply conveyed his personal view concerning the harsh sentencing structure of the New York drug laws as promulgated by the legislative branch of government. It is that law which limits the powers of the sentencing court to which he refers. It is the State Legislature which he refers to and indirectly addresses. Nowhere does he refer in this context to his being merely a "rubber stamp" regarding the plea bargain. His expression "rubber stamp" occurs in relationship to the legislative enactment which limits the power of the judicial branch as regards sentencing for violation of the State's drug laws. To view the comment of Justice Dontzin in the manner suggested by defendant is to defy common sense and reason and to engage in the semantic reality best exemplified by the following passage from Lewis Carroll's masterpiece, "Through the Looking Glass": " 'When *I* use a word,' Humpty Dumpty said, in rather in scornful tone, 'it means just what I choose it to mean—neither more nor less.' 'The question is,' said Alice, 'whether you *can* make words mean so many different things.' 'The question is,' said Humpty Dumpty, 'which is to be master—that's all.' " (Lewis Carroll, Through the Looking Glass, ch 6.) The sentencing court did not express a belief that it lacked power to depart from the plea bargain (i.e., that it was absolutely bound by the plea bargain), but, in effect, stated that it would honor that agreement (the plea bargain) under the circumstances and that in consequence it would be wrong for the court to "double cross" the defendant by issuing a sentence greater than that agreed upon or, coequally, to "double cross" the People by issuing a lesser sentence than that agreed upon unless a new plea bargain were entered into.